*DUNCAN McPHERSON *v.* WILLIAM J. LEON-** **377** **ARD, Comptroller.

*Decided July 3rd, 1868.*

CONSTITUTIONAL LAW ; STYLE OF ACTS OF ASSEMBLY.

The provision in sec. 29, Art. 3, of the Constitution, that, "The style of all laws of this State shall be, 'Be it enacted by the General Assembly of Maryland,'" is directory only, and not mandatory, and the omission from the enacting clause of an Act of Assembly, of the words, "by the General Assembly of Maryland" does not render the Act unconstitutional and void. (*a*)                    p. 389

An Act of Assembly authorizing the Comptroller to pass upon and audit certain claims, the nature and character of which are therein specified, and to draw his warrant upon the Treasurer in favor of each claimant, for the amount found by the Comptroller to be justly due to said claimant, said warrants to be paid out of any money thereafter in the Treasury not otherwise appropriated, provided the whole amount of said warrants should not exceed $300,000, is within the requirements of sec. 32, Art. 3, of the Constitution.                    pp. 389, 390

---

(*a*)  Cited in *Maxwell v. State,* 40 Md. 302.  See *State v. Baltimore, County, post,* p. 523.  *Cf. Archer v. State,* 74 Md. 449, where the case in the text is held not to be a controlling authority upon the question of directory and not *mandatory* provisions in the Constitution.

Appeal from the Superior Court of Baltimore City.

The appellant filed a petition in the Superior Court of Baltimore City, alleging that by the Act of 1867, ch. 337, it was provided that the militia of the State should be organized, and a National Guard formed out of parts of said militia; that by the twelfth section of the Act, it was further provided that whenever any company of the National Guard should have provided itself with a proper uniform, to the satisfaction of the Inspector General, the members thereof should be re-imbursed for the expense, either in whole or in part, to an amount not exceeding twenty dollars per man; that subsequently the National Guard was formed in accordance with the provisions of this law, and on the 14th of May, 1867, the Adjutant General of the State, by the direction of the Governor, advertised for sealed proposals for furnishing uniforms to said National Guard, that proposals made by the petitioner were accepted **378** by the Adjutant General by order of *the Governor, and on the 14th of June, 1867, a contract was entered into between the petitioner and the Adjutant General, under the direction and by authority of the Governor, for furnishing for said National Guard a thousand suits of uniform, at eighteen dollars and eighty cents each; that the petitioner made other like contracts and had fully complied with the provisions thereof, but had been paid nothing by the State for such services. The petition further alleged that at the session of the General Assembly of 1868, a law was passed entitled, " An Act to provide for the liquidation and settlement of claims heretofore contracted for arming and uniforming the militia," said law being ch. 425, of said session; that by this Act the Comptroller of the State was authorized and directed to receive and audit all claims and demands for arms or equipments, or uniforms, furnished to the State or the militia, since the session of the General Assembly of 1867, on contract with or order by, or request of the Governor; that the claim of the petitioner came within the purview of said law, and he had presented the same to the Comptroller, who had refused to receive or audit it, alleging as a reason therefor that the law was invalid. The petition asked that a *mandamus* might issue against the Comptroller commanding him to receive and audit the claim of the petitioner as provided by the said Act of Assembly.    The

Comptroller answered admitting the allegations of the petition, except the allegation, that at the session of the General Assembly of Maryland, in the year 1868, a law was passed entitled, " An Act to provide for the liquidation and settlement of claims, etc. ;" the respondent admitted that there was on file in the Court of Appeals a paper-writing, filed in said court with the laws passed by the General Assembly of Maryland at their session in January, in the year 1868, numbered 425 ; and that the title and purport of said paper-writing were truly set forth in said petition, and that the Great Seal of the State was duly impressed thereon ; and that the signatures thereto, including the approval and signature by the Governor, were *the genuine signatures of the officers of the two houses **379** of the said General Assembly respectively, and of the said Governor ; and that the copy of said paper-writing, filed with the said petition, was a true copy thereof ; but the respondent denied that the said paper-writing purported or professed by its terms to have been enacted by the General Assembly of Maryland, and therefore was not a law of the State of Maryland, because the Constitution of the State of Maryland, Art. 3, sec. 29, declared that, " The style of all laws of this State shall be, ' Be it enacted by the General Assembly of Maryland,' " and that this was a formula for the enacting clause of all laws, imperative upon the General Assembly, and indispensable to the validity of their enactments.

The respondent further objected, that even if he should receive and audit the claim of the petitioner, his action thereon would be nugatory, inasmuch as he was authorized by the Constitution only to issue " his warrants for money to be paid out of the Treasury, in pursuance of appropriations by law," and that the Constitution required that " every such law should distinctly specify the sum appropriated," and declared that " no money should be drawn from the Treasury of the State by any order or resolution, nor except in accordance with an appropriation by law ; and the respondent charged that the paper-writing in question, even if otherwise valid as law, did not profess to appropriate any sum of money whatever, and did not distinctly specify the sum appropriated according to the intent and meaning of the Constitution of the State. It was agreed by the parties that the sole question to be submitted to the

court, should be the sufficiency in law of the reasons set forth in the answer, for not receiving and auditing the claim of the petition. The court (Dobbin, J.,) passed an order *pro forma,* dismissing the petition, and thereupon this appeal was taken.

The cause was argued before Bartol, C. J., Stewart, Brent, Miller and Robinson, JJ.

**380**   *\*C. D. McFarland* and *William S. Waters,* for the appellant:

1st. Is the law invalid because the style, as prescribed by the Constitution, is not inserted in it?

Statutes made for the public good are expounded without restrictions. Dwarris on Statutes, 60. The great rule adopted in construing statutes is, to ascertain the *intention* of the Legislature; and in the construction of the Acts of a Legislature or the provisions of a constitution, courts constantly take in review the entire circumstances, the inducements which led to the passage of the law, and the consequences of its being carried out, or its failure to be carried out. *Purdy v. People,* 4 Hill, 402-3.

It has been frequently determined that the title of an Act is no part of the Act. 1 Kent, 519; *Mills v. Wilkins,* 6 Modern, 62. With the same force may it be said that the *style* of the Act is no part of it. The constitutionality of the Act under discussion, having been raised in this case, is a question which courts will approach with great caution, ponder it, examine it in every possible aspect, and never declare the Act void unless the nullity and invalidity is such as to place the matter beyond doubt. 16 Pick. 95; *Tabor v. Crook,* 15 Mich. 325; *Newland v. Marsh,* 19 Ill. 384; *Clark v. Rochester,* 24 Barb. 471; *State v. B. & O. R. R. Co.* 12 G. & J. 438; *Regents, etc., v. Williams,* 9 G. & J. 383; *Baltimore v. State,* 15 Md. 475-477.

A statute is void only when it clearly, palpably and plainly violates the Constitution, and in such a manner as to leave no doubt in the mind of the judges. This is not opposed by a single *dictum. Sharpless v. Philadelphia,* 21 Pa. St. 164; *Ex parte M'Collum,* 1 Cowen, 550; *Ogden v. Saunders,* 12 Wheat. 270.

This law is clearly constitutional, although it does not contain the " style " provided for in Art. 3, sec. 29 of the Constitution, because said provision is directory only.  A *Con- **381** stitution is mandatory when it gives a direction in which the rights and immunities of a citizen are involved.  This principle may be illustrated by referring to other provisions in the Constitution—that a law cannot be passed providing for imprisonment for debt; the property of the wife shall be protected from the debts of her husband; no lottery grant shall be authorized; no one can be deprived of the right of trial by jury, or the liberty of the press abridged.  These provisions are mandatory— the General Assembly cannot disregard them—but the provision in the Constitution relating to the style of the law pertains to form only, and is not of its essence or substance. *Stryker v. Kelly,* 7 Hill, 24; *Rex v. Lexdale,* 1 Burr. 447; *Marchant v. Langworthy,* 6 Hill, 647; *R. R. Co. v. Governor,* 23 Mo. 368; *Anderson v. Baker,* 23 Md. 571, 585, 586; *The Princes' Case,* 8 Coke, 20.

A law is directory only when it contains no clause declaring the law void, if the provision is not complied with.  *People v. Supervisors of Chenango,* 8 N. Y. 328; 2 Am. Law Reg. N. S. 409.  The provision in the Constitution of several of the States, requiring each Act to contain but one subject or object, is directory.  *Pim v. Nicholson,* 6 Ohio, 176; *Miller v. Gibson,* 3 Ohio, 475; *Lehman v. McBride,* 15 Ohio, 602; *Davis v. State,* 7 Md. 152; *Pierpont v. Crouch,* 10 Cal. 316; *Washington v. Page,* 4 Cal. 388.

It cannot, therefore, be successfully contended that the *style* of a law is anything more than directory.  A clause in the Constitution of a State requiring all writs to be in the name of the State, is merely directory, and the writ is good although it does not so run.  *Davis v. Wood,* 7 Mo. 162.  A provision in the Constitution of a State requiring members of the Legislature to take a particular oath—their failure to do so does not invalidate their proceedings.  *Hill v. Boyland,* 40 Miss. 618; Am. Law Review, April, 1868—503.

"Whenever the General Assembly shall enact any public general law, not amendatory of any section or Article in *the Code, it shall be the duty of the General Assembly **382** to enact the same in Articles and sections in the same manner

as the Code is arranged." This provision of the Constitution is in the same Article and section that the provision for the style of law, yet it has been declared to be directory merely, and not essential to the validity of the law. *Anderson v. Baker,* 23 Md. 571, 585; *Davis v. State,* 7 Md. 159; *Keller v. State,* 11 Md. 531; *Parkinson v. State,* 14 Md. 193.

This provision, found in Art. 3, sec. 29, of the Constitution, relating to the style of laws, is in the Constitution of 1776, sec. 53; and yet, the words " by the General Assembly of Maryland " has been left out of the following statutes: Act 1777, ch. 7 (February Session); 1778, ch. 16 (October Session); 1779, ch. 15; 1780, ch. 36 (October Session); 1781, ch. 37 (May Session); 1790, ch. 55; 1792, ch. 31; 1802, ch. 111; 1864, ch. 228 ; (*Neale v. St. Paul's Church,* 8 Gill, 116 ; *Bethel Church v. Carmack,* 2 Md. Ch. 143).

All of the above laws are without the words " by the General Assembly of Maryland;" and while one law involves the division line between two counties, and others the title to lands—. most important laws—yet their validity and constitutionality does not seem to have been questioned. What has been done in the beginning, and has continued for a long series of years, without any question as to the rightful power or authority upon which such acts have been grounded, may be presumed, by succeeding public agents, to have been rightfully and properly done in case no private right or public immunity is invaded. This provision in the Constitution relating to the style of the laws was adopted in the Constitution of 1776, merely for the purpose of distinguishing them from the laws passed by the Lord Proprietary, by and with the advice and consent of his Lordship, the Governor, and the Upper and Lower Houses of Assembly of this Province. The political division of this territory had changed; a revolution had taken place. If the author-

**383** ity that passed a law *can be ascertained from other sources, then this provision relating to style is not essential. It can be ascertained by its being found among the published statutes, being among the records of the Clerk of the Court of Appeals, being signed by the President of the Senate, Speaker of the House and Governor; also it appearing by the journals of the Senate and House that such a law was passed by the constitutional majority.

The provisions of the Constitution, in Art. 3, sec. 29, in regard to the style of the laws, as it is adopted from the Constitution of 1776, merely prescribes the style, but leaves the law in reference to the want of the statement of the enacting authority as heretofore. *People v. Supervisors of Chenango,* 8 N. Y. 328.

The next section in the same Article prescribes the manner in which laws shall be authenticated. That when *passed by the General Assembly, and* sealed with the great seal, the Governor shall sign them, with certain formalities, and *then* they shall be recorded and shall be certified under the great seal to the courts. The strict compliance with these provisions, as shown by the record, establishes the fact that the law was passed by the General Assembly so conclusively that it cannot be contradicted. Constitution, Art. 3, sec. 30; *Anonymous,* 3 Salk. 566; Com. Dig. Tit. Parliament G. 22.

It is not necessary to the validity of a legislative Act that the enacting authority should appear in the Act itself. If a statute be properly certified from the records, it will be intended that it was passed by the proper authority, although this does not appear from the body of the Act. In this case the doctrine of intendment is not required; the fact appears specifically that it was passed by the proper authority. Com. Dig. Tit. Parliament R. 3; *The Princes' Case,* 8 Coke, 20; Coke upon Littleton, 98 C.

2nd. Is the law invalid as an appropriation? This law is an appropriation. It expressly appropriates moneys not otherwise appropriated, and a specific sum is appropriated. *This **384** Act is not an order or a resolution, but a law. *Thomas v. Owens,* 4 Md. 189.

*Isaac D. Jones,* Attorney-General, for the appellee:

The paper-writing filed with the petition, is not the Act of the General Assembly of Maryland, does not profess so to be, and has no effect as a law of the State of Maryland, because it does not conform to the constitutional formula prescribed by Art. 3, sec. 29, of the Constitution, which declares that, " The *style* of all laws of this State shall be, ' Be it enacted by the General Assembly of Maryland.' " This *form of the enacting clause* or style, is of imperative and indispensable obligation upon the Legislative Department of the Government. Rules

prescribed by the Constitution or law, cannot be abrogated even by general consent. Cushing's Law and Practice of Legislative Assemblies, 304, 311-313; *Thomas v. Owens,* 4 Md. 189.

In reference to constitutional provisions, it may be stated generally, that those which require the *observance of certain formalities,* are equally imperative with those which withdraw certain topics altogether from ordinary legislation; and that it is competent in the one case as well as in the other, *for the Courts of Law to set them aside for unconstitutionality.* Cushing's Law and Practice of Leg. Assem. 931, 932.

This is a question of constitutional construction. The first thing to be considered in interpreting the Constitution is the purpose of its framers, and of the people, in ordaining its several provisions. *Buckingham v. Davis,* 9 Md. 324.

Although this particular provision of the Constitution has not before been the subject of controversy in this court, yet the clause in the same section, requiring that " every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title," and " that no law shall be revived, etc., by reference to its title only," have several times been under consideration, and this court have uniformly held that the rules prescribed in the section as to the **385** *mode of enacting laws, are of imperative obligation upon the General Assembly. *Davis v. State,* 7 Md. 151; *Keller v. State,* 11 Md. 525; *Parkinson v. State,* 14 Md. 184; *Hardesty v. Taft,* 23 Md. 512.

The rule prescribing " *the style* of all laws," is as old as the State of Maryland. It was made by the Constitution of 1776, and adopted by each succeeding Constitution. The Constitution of 1777 also prescribed the *style* of public commissions, writs and grants, and the mode of their authentication. That Constitution also prescribed the formula for the conclusion of all indictments " against the peace, government and dignity of the State." Constitution of 1776, sec. 57, etc. The Constitutions of 1776, 1851, 1864 and 1867, all declare that the Legislature shall consist of two distinct branches, a Senate and House of Delegates, which shall be *styled* " the General Assembly of Maryland." And that *the style* of all laws shall be, " Be it

enacted by the General Assembly of Maryland." Are these express provisions merely directory?

The mode of stating the enacting authority, in the Acts of the British Parliament had varied exceedingly at different periods prior to the 13th year of Charles II. Since then " the present *correct style* hath uniformly obtained." Bacon's Abr. Statute. This diversity " in the mode of stating the enacting authority," was doubtless well known to the able and intelligent framers of the Constitution of 1776, and led them to adopt and prescribe a rule to guard against it, and to secure certainty and uniformity in legislation. Nearly all the State Constitutions have a similar rule.

A court will not order a *mandamus* to compel the performance of a nugatory act.

This assumes, and it is so contended, that the third section of the alleged, or " so-called," law, makes no such appropriation, distinctly specifying the sum appropriated, as is required by Art. 3, sec. 32, of the Constitution. The object of this section of the Constitution is to prevent wasteful and fraudulent, or indefinite appropriations of the people's *money, and **386** the Legislature and the people should be notified of the specific sum appropriated, and of the specific purpose of the appropriation. The third section of the " so-called " Act of Assembly, does not in form or substance, or in legal effect, comply with the requirement of the Constitution.

Brent, J., delivered the opinion of the court.

The petition of the appellant for a *writ of mandamus,* and the answer of the Comptroller of the Treasury, present the question of the constitutionality of the law of 1868, ch. 425, providing " for the liquidation and settlement of claims heretofore contracted, for arming, equipping and uniforming the militia."

The Constitution of the State, Art. 3, sec. 29, provides that, " The style of all laws of this State shall be—Be it enacted by the General Assembly of Maryland." In the enactment of the law now presented for our examination, the words, " by the General Assembly of Maryland," do not appear, and the question arises, whether the omission of these words by the Legislature renders the law invalid and void.

The English authorities, which have been referred to upon the subject of the style of the statutes of Parliament, shed but little, if any, light upon the question before us.  Prior to the thirteenth year of Charles II., the mode of stating the enactment of statutes in England had attained no fixed form, and the present style was not adopted until that period of time.  The few cases which have arisen there, involving the proper style of enactment, turn upon the sufficiency of proof, upon the face of the statute or otherwise, to show that it was passed by lawful authority.  If that were the question here, irrespective of any constitutional provision upon the subject, there would be no doubt of the validity of this law, coming before us as it does, signed by the presiding officers of the two branches of the Legislature, approved by the Governor, and bearing the great seal of the State.

**387**   *The present style of the laws in this State was adopted in the Constitution of 1776, when the political condition of the people was undergoing a change, when the laws were no longer to be adopted " by the Lord Proprietary, by and with the advice and consent of his Lordship, the Governor, and the Upper and Lower Houses of Assembly of the Province," for the purpose of conforming them to the changed condition of things, and to secure uniformity in legislation.  The same style has been continuously preserved to the present time, and although a number of laws have been found upon the statute book of the State from 1777 to 1864, involving important rights, in which the words, "by the General Assembly of Maryland," are not found in the enactment, the courts have never been called upon to decide their validity, and the question is now for the first time presented.

It is not, strictly speaking, a question of construction, for the language of the Constitution is clear, but one of application.  How and to whom is this particular provision to be applied, and what shall be the consequence of a disobedience of its directions?

This leads us to inquire whether the provision, as found in the Constitution, is directory only, or mandatory and imperative.  If directory and not mandatory, the rule is, it may be disregarded without rendering the Act void.  In *Foot v. Prowse,* 1 Strange, 625, the Mayor was to be chosen by aldermen *annu-*

*atim eligendi,* but those present at the election had been in office for several years, and had not been elected *annuatim.* The Exchequer Chamber, upon an appeal " after two solemn arguments," decided the words *annuatim eligendi* were directory, and held the appointment, valid, and this judgment was afterwards affirmed in Parliament.    In *Rex v. Loxdale,* 1 Burr. 447, Lord Mansfield says: " There is a known distinction between circumstances which are of the *essence* of a thing required to be done by an Act of Parliament, and clauses merely directory."    These decisions have been followed up by a long train of cases recognizing, without a single exception, **388** as far as we have been able to ascertain, the distinction between the provisions of a statute which are formal only and those which are of its essence and substance.    Form, or that which is not the essential thing to be done, it is true, by the particular language used, may be made a matter of substance, as is well exemplified in the case of *The Queen v. Corporation of Durham,* 10 Mod. 146.    It is there said, " that though a town clerk be *annuatim eligibilis,* he remains town clerk after the year and until another was chosen, but if he had been *eligibilis pro uno anno tantum,* his office would have expired at the end of the year."    But where there is no language used, importing that it is *of substance,* the clauses of a law directing its observance are regarded as directory only—for that is directory which is not of the essence of the thing to be done.    Sedg. on Stat. & Con. L. 368, *et seq.,* and authorities there cited; Smith on S. & C. Con. sec. 679; *Striker v. Kelly,* 7 Hill, 24; *R. R. Co. v. Governor,* 23 Mo. 368.

In view of this doctrine, we have very carefully and anxiously weighed and examined the question now before us, and cannot regard the provision requiring the words, " by the General Assembly of Maryland," to be in the enactment of a law, as otherwise than directory to the Legislature to secure, as we have before said, uniformity in the laws.    They certainly are not of the essence of the law.    They furnish no aid in its construction, and its provisions are as clear and intelligible without them, as they would be with them.    They are not essential and material in indicating by what authority the law was enacted, for, signed and approved by the proper officers of the Senate and House of Delegates, and by the Governor of the

State, sealed with the great seal of the State, and found en-
rolled among the laws of the State, with no allegation or even
suspicion that it is there by fraud, it comes before the courts
bearing upon its face sufficient evidence that it has been really
and truly passed by the General Assembly of Maryland.  To
**389** announce that a law, supported *by these solemnities
and sanctions,. was not valid because of the omission of words
thus immaterial and formal only, would be sacrificing substance
to mere form, and declaring that to be mandatory, which the
law pronounces to be directory.  Constitutions, as well as laws,
are best maintained and preserved by interpreting their pro-
visions according to established rules of construction, and
rights under them are rendered more certain and secure.

We do not think the question now before us has been de-
cided in *Hardesty v. Taft,* 23 Md. 512.

That case did not involve the construction of this clause of
the Constitution.  It was referred to incidentally in the opinion
of the learned Judge, in language no means decisive of the
point, and leaving it open for subsequent judicial interpreta-
tion.  The Judge says, " the first clause of this section pro-
vides for those properties of a general statute law of Maryland,
which *may* be regarded as necessary to its validity," and fur-
ther on, " these are regarded as requisites in the structure of
such a law, necessary to its being, and yet *only to a reasonable
intent."*

Being satisfied that the words " by the General Assembly of
Maryland " are not of the essence and substance of a law, but
their use directory only to the Legislature, we cannot, because
of their omission from the enactment, declare the law in ques-
tion unconstitutional and void.

The next objection which we are to consider, is that the law
in question makes no such appropriation as is required by Art.
3, sec. 32, of the Constitution.  The object of this section is,
no doubt, as stated by the Attorney General, to prevent waste-
ful and fraudulent, or indefinite appropriations of the people's
money, and that the Legislature and the people should be noti-
fied of the specific sum appropriated, and of the specific pur-
pose of the appropriation.  We think upon a fair and reason-
able construction of this law, a specific sum is distinctly appro-
priated, and the object to which it is to be applied distinctly

specified.  Appropriations in this *form have the sanc- **390** tion of precedent, and they are sufficiently certain and specific to meet the requirements of the Constitution.  The third section of the same law directs, that the warrant of the Comptroller " shall be paid out of any money thereafter in the treasury, not otherwise appropriated."  This is certainly an appropriation, and a fund is dedicated to its payment by the terms " out of any money thereafter in the treasury, not otherwise appropriated."  To say when the Legislature directs a claim to be paid out of a certan fund, it makes thereby no appropriation for the payment of that ᵛᵃᵢᵗn, would be to refuse to give to language its ordinary acce⁻¹ ᵃ ' ᵒn, and reject the most familiar rule of interpretation.  If ᵛ ' ᴡ had stopped here it would have been nugatory, but thᵉ ᵃᵛ nt appropriated is distinctly specified, by providing that ᵤᴄ whole amount of said warrant shall not exceed three hundred thousand dollars."  It is the only form in which thᵉ ᴸ ᵣopriation could have been made, because, to meet the requiᵢ ᵢs of Art. 3, sec. 52, of the Constitution, the claims were t ᵤe audited by the Comptroller as directed in the first and second sections of the law.

Of the object to which the money appropriated is to be applied there can be no doubt, and it was conceded in the argument, that this, at least, was stated with sufficient certainty and distinctness.

Upon the whole, we are of opinion that the law is constitutional, and the duties of the Comptroller under it sufficiently certain and fixed, to authorize the issuing of the writ of *mandamus,* as prayed in the petition of the appellant.

The *pro forma* judgment of the Superior Court of Baltimore City, must, therefore, be reversed, and the writ of *mandamus* ordered.

*Judgment reversed and writ of mandamus ordered.*


*Stewart, J., delivered the following dissenting **391** opinion :

The record before us submits two questions for adjudication.

1st. Is the Act of the Legislature involved in this inquiry a valid law, notwithstanding it is not in conformity with the lan-

guage of the Constitution, prescribing the style of all laws of
the State ?

2nd. Does it, in accordance with the Constitution, or in fact,
make any distinct and substantive appropriation of the public
money?

According to my judgment, this Act is essentially and fatally
defective on both grounds, and is not in accordance with Art.
3, secs. 29 and 32, of the Constitution.   The English cases, in
regard to the construction of statutes or Acts of the British
Parliament, afford but little aid where the meaning of our State
Constitution, and the conformity of the Acts of·the Legisla-
ture therewith, are the subjects of inquiry.   So far as I have
been able to ascertain from the authorities by analogy or other-
wise, a distinct recital of the enacting authority of a statute is
part of the substance of the Act, and essential to its validity.
Our Constitution, which, in this respect, follows its anteced-
ents from 1776, in prescribing a style for our laws, has recog-
nized its materiality and given force and effect to its impor-
tance, and insisted upon conformity therewith in the proper
enactment of statutes.   I do not, however, propose to argue the
legal question.   My opinion is quite as much a matter of judi·
cial sentiment, as the result of legal deduction; but I am fully
satisfied from my researches, the authorities fully sustain the
truth of the proposition, that the incorporation· of the style
showing the enacting authority upon the face of the Act, is
material and indispensable to its validity.   Believing that the
provisions of the Constitution, both as to form and substance,
or the deliberate judgment of the people in their highest sover-
eign act, ordaining their form of government, ought to be
strictly construed and observed, " and any departure therefrom,

**392** under any plea, \*is subversive of good government"—
to use the language of Art. 44 of the Declaration of Rights,
it seems to me, with that respectful deference due to the differ-
ing conclusion of a majority of my brethren, that the Act now
in question contains a fatal omission on the part of the Legis-
lature, no doubt the result of accident, and not discovered by
them at the time, and has not been conformed to the require-
ments of the Constitution.   I cannot give to it my approval as
a valid law.

That instrument having expressly declared, in Art. 3, sec. 29,

that " The style of all laws of the State shall be, ' Be it enacted by the General Assembly of Maryland,' " it is incumbent on the law-making department to pursue that mode. If a positive requirement of this character, although, in some sense, it may be looked upon as a mere formality, can be disregarded, so may others of a different character, and where will the limit be affixed, or practical discrimination made as to what parts of the organic law of the State are to be held as advisory, directory or mandatory?

Disregard of the requirements of the Constitution, although, perchance, in matters of mere form and style, in any part, in law, may establish dangerous examples, and should, in all proper ways, be discountenanced. The safer policy, I think, is to follow its plain mandates in matters that may appear not to be material, in order that the more substantial parts may be duly respected. If those who are delegated with the trust of making the laws, from the purest motives, improvidently omit the observances of the °Constitution under any circumstances, such oversight may be referred to in the future by others, with far different views, as precedents, and for the purposes of abuse—a higher responsibility is imposed upon those selected by the people for the discharge of legislative duty, and a greater obligation is demanded of them to exemplify, by their practice, a careful compliance with the Constitution. By a vigilant observance of its commands, the more reasonable is the probability that the best order will be secured. It is unnecessary to illustrate, by any argument, the *soundness of **393** this general consideration, which, I am sure, all will admit to be unquestionable, that a strict conformity with the Constitution is an axiom in the science of government. I certainly entertain such profound conviction of its truth, that I do not feel authorized to give my approval to this Act as a valid law, but, on the contrary, am constrained to say, that the omission of the style required by the Constitution is fatal to its validity.

Upon the second question in regard to the manner of appropriating the public moneys, which is an important attribute of legislative power, the Constitution has carefully given very precise directions, which, I think, have not been observed in this instance.

The first section of the Act in question authorizes and directs

the Comptroller to receive and audit all claims and demands on account of the matters therein specified.

The second section prescribes the mode and quality of the proof to be taken by the Comptroller. The third section requires the Comptroller to audit and allow for payment such claims as he may find correct and true, and to draw upon the Treasurer, in favor of each claimant, for the amount so found by him to be justly and truly due, and said warrants shall be paid out of any money thereafter in the treasury not otherwise appropriated, provided, the whole amount of said warrants shall not exceed three hundred thousand dollars.

Two provisions of the Constitution are applicable to the appropriation of the public moneys, to wit: Art. 3, secs. 32 and 52, when a sum like that now in question is to be appropriated, and they must be construed together. In the absence of any proof to the contrary, where sec. 32 has been complied with, it would be presumed that the Legislature, in making an appropriation, had pursued the directions prescribed by sec. 52. It was doubtless designed that the requirements of sec. 52 should precede action under sec. 32.

Whether the directions of both can be combined and carried out effectually, in the same Act of the Legislature, as **394** *designed by the proceedings in question, involves a proposition not directly presented in this case, and not necessary to be decided in disposing of the matter before us. Reference to sec. 52 more clearly shows the design of the framers of the Constitution to guard against hasty and reckless appropriations of the public money, and gives greater emphasis to the precise requirements of sec. 32. Taken together, they demonstrate the incompatibility of the appropriation in question with sec. 32. The manner of this appropriation reverses the order prescribed in sec. 52, the fair construction of which clearly shows that the mode adopted by this Act is not such distinct and unconditional appropriation prescribed by sec. 32.

That provision was adopted for wise purposes, and should be strictly adhered to by the Legislature. It requires that every law appropriating public money " shall distinctly specify the sum appropriated and the object to which it shall be applied." This Act makes no such appropriation—on the contrary, it is conditional, and to have no effect, if the sums found due by the

Comptroller exceed the amount named therein. The facts stated in the answer of the appellee, and which are agreed by the parties to be the only basis for the action of the court, do not disclose whether all the claims to be audited and allowed by the Comptroller, if found correct, would be within the amount limited by the said Act. If they should exceed that amount, then the Comptroller is not authorized, by its terms, to issue his warrants.

In such case, the *mandamus* would be a mere nugatory process, and in conflict with the decision of this court, in *Commissioners of Public Schools v. County Commissioners,* 20 Md. 449.

This Act virtually undertakes to delegate to the Comptroller *quasi* legislative and judicial authority, to ascertain, allow and draw his warrant upon the Treasurer for such sums as he may find to be correct, according to his judgment, provided they do not, in the aggregate, exceed the sum specified. *This **395** discretionary authority to the Comptroller, in effect, places a contingent fund at his disposal. The same section of the Constitution, requiring the Legislature to make specific appropriation of the public moneys, expressly authorizes the Legislature to place a contingent fund with the Executive, who is required to report to the General Assembly, at each session, the amount expended, which excludes all other contingent funds.

Art. 3, sec. 52, to which reference has been made, " prohibits the General Assembly from appropriating any money for payment of any private claim exceeding three hundred dollars, unless said claim shall have been *first* presented to the Comptroller, with the proofs, upon which the same is founded, and reported upon by him." This Act, without any preliminary examination by the Comptroller, in advance of its passage, so far from making any distinct appropriation, requires the Comptroller to audit certain demands, with a proviso contingent and dependent upon his finding them to be just and proper, and is not therefore such recognition of their validity by the determination of the Legislature, and distinct appropriation of the money to pay them, as is demanded of it by sec. 32 of the Constitution.

The legislative discretion in this respect is assumed to be delegated to the Comptroller, under certain limitations, and if

it is to be operative as sound law, the Comptroller is certainly thereby endowed with large judicial, legislative and executive functions.  He judges as to the correctness of the claim, and applies the money to pay it, or withholds his assent, thus exercising plenary authority not warranted by any provision in the Constitution.  This highest fiscal officer of the State, chosen by the people, doubting his power under such circumstances to draw the money from the treasury of the State, has refused, and the Attorney General, whose duty it is, under the express requirements of the Constitution, and the responsibility of his

**396**  oath of office, to give him his advice if required, *sustains him in his objections.  The questions before us are thus presented in the most imposing form.  The facility of drawing money from the treasury will, ordinarily, be easy enough, without the aid of the courts to enforce prompt compliance upon the officials, whose duty it is to guard it from improper demands.  The Constitution having, by the means referred to, by the requirement of specific appropriations, and the preliminary examination and report of the Comptroller as to all sums over three hundred dollars, on private claims, and the superadded general responsibility of the Comptroller, as the highest fiscal officer of the State, endeavored to guard against all hasty and incautious applications of the public moneys, it should be a very clear case, and manifestly demanded by the rigid exigencies of the law, to induce the courts to compel the Comptroller, by peremptory *writ of mandamus,* to relax his protective powers and thus break down the barriers devised by the Constitution to preserve the public treasury.

If the Legislature make a specific appropriation of money according to the requirements of the Constitution, it is the mere ministerial duty of the Comptroller to issue his draft for its payment, having no discretion about it.  The law itself, making the appropriation being mandatory, as it should be, and without reservation to the Comptroller, if he fails to meet its imperative requirements, the party entitled can have him compelled to discharge his official duty by *mandamus.*  But if there be no distinct appropriation, but discretion vested in the Comptroller, as in this case, as to the allowance of claims according to his judgment, and payment of the money, (if such discretion can be constitutionally imposed upon him,) and with

conditions and provisos which may make his action contingent and nugatory, the courts should not in such case interfere to control and direct him by process of *mandamus*.

Believing the provisions of the Constitution to have been incautiously disregarded in this instance by the General Assembly of the State, and that they alone have the power *to **397** correct such omission on their part, however just and meritorious the objects the Legislature had in view, or inopportune for the claimants to be benefited thereby, I cannot resist the conclusion that the said Act has not the constitutional characteristics to sustain it. Upon either of the reasons relied upon by the appellee, the judgment rendered by the court below, in my view, should be affirmed. Differing with a majority of my brethren, in the conclusion they have reached in this case, I have considered it more respectful to their judgment, and due to the occasion of more than ordinary gravity, where the construction of the Constitution is involved, to give expression in this form to some of the considerations upon which my convictions are based.

Miller, J., delivered the following opinion, dissenting in part from the opinion of the court:

In my opinion the provision of the Constitution that " The style of *all laws of this State* shall be, ' Be it enacted by the General Assembly of Maryland,' " is an imperative mandate of the people in their sovereign capacity to the Legislature, requiring that all laws to be binding upon them shall, upon their face, express the *authority by which* they were enacted; and wherever this authority does not appear upon the face of any Act, it is *not a law.* I am, therefore, constrained to dissent from the opinion expressed by a majority of the court on that point. I entirely concur with them in the views expressed on the other points involved in the case.