# POSTAL TELEGRAPH CABLE COMPANY *vs.* STATE OF MARYLAND.

*Constitutional Law—Enacting Clause of Statute—Validity of Statute Requiring Telegraph Companies to Show on Every Message Delivered the Time It Was Filed and the Time Received—Waiver of Statute Not Allowed—Interstate Commerce.*

The provision of Constitution, Art. 3, sec. 29, that "the style of all laws of this State shall be, Be it enacted by the General Assembly of Maryland," is directory and not mandatory. And an Act beginning, "Be it enacted by the people of the State of Maryland, represented in the General Assembly," contains a sufficient enacting clause.

The Act of 1908, Chap. 280, provides that telegraph companies in the State of Maryland shall show conspicuously, on every telegram delivered, the time it was filed for transmission and the time it was received at the office from which it is to be delivered. Failure to comply with the Act is made punishable by a fine for every telegram delivered in violation of it. *Held,* that the provisions of this statute cannot be waived by the sender so as to relieve the telegraph company from the duty of making the notations.

*Held, further,* that a telegraph company is not entitled to require the sender of the message to pay the cost of giving this information as to time.

*Held,* further, that the statute relates only to messages sent from one point in Maryland to another point in the State, and hence is in no wise a regulation of interstate commerce, but is a legitimate exercise of the police power of the State.

*Decided June 29th, 1909.*

Appeal from the Criminal Court of Baltimore City (GOR-TER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*Howard Bryant,* for the appellant.

*Isaac Lobe Straus, Attorney-General,* and *Eugene O'Dunne, Deputy State's Attorney of Baltimore City,* for the appellee.

BOYD, J., delivered the opinion of the Court.

The appellant was convicted of violating Chapter 280 of the Acts of 1908. There are four counts in the indictment. The first alleges that the company did deliver at the City of Baltimore a telegram dated at Annapolis, Md., to one W. H. Hellewell without showing on the said telegram the time it was filed at Annapolis for transmission and the time it was received by the company at its office from which it was delivered; the second alleges that it did deliver at Baltimore a telagram dated at Annapolis, on which the time of filing at the place of origin and the time it was received at its destination did not appear under the captions "Time Filed," and "Time Received;" the third alleges that it did fail to show on a telegram dated Annapolis, Md., delivered in Baltimore the time it was filed at Annapolis for transmission and the time it was received at the office of the company from which it was delivered and the fourth alleges that it failed to show on the telegram the time of filing it at the place of origin and the time it was received at its destination under the captions "Time Filed" and "Time Received."

A demurrer to the indictment and to each count was overruled and the company then filed two special pleas to each count. The first plea alleges that the sender of the message notified the company in writing that he would not pay, and he refused to pay, for the extra words to show upon

the message the time it was filed for transmission at Annap-
olis; and after said notification and refusal to pay, the sender
authorized and directed in writing the company not to send
with said message, the time it was filed at Annapolis for
transmission to Baltimore, and he waived the same in writ-
ing. The second plea alleges, 1st, that the sender refused to
pay for the transmission with said message the extra words
to wit, "Time said message was filed for transmission at
Annapolis, Maryland," which extra words exceed the ten
words in the body of said message, and the law does not re-
quire the company to send or transmit said extra words with-
out charge, and second, that the sender of the message noti-
fied the company in writing that he did not want or desire
the "Time Filed" for transmission sent with the message to
Baltimore, and he waived the same in writing. The pleas to
the other counts are substantially the same. A demurrer to
each of the pleas was sustained and the case was then sub-
mitted to the Court on a plea of not guilty. The Court found
the traverser guilty and imposed a minimum fine of ten dol-
lars, from which judgment this appeal was taken.

A number of defenses have been urged and it is claimed
that the law is in conflict with the Constitution of this State
and with that of the United States. It is also contended
that the construction placed upon the statute by the State is
not justified.

1. It is urged that the Act is unconstitutional and void
because in conflict with the clause in the twenty-ninth sec-
tion of Article 3 of the Maryland Constitution, which pro-
vides that "The style of all laws of this State shall be, 'be
it enacted by the General Assembly of Maryland.'" The
Act was evidently drawn by some one not familiar with the
form in use in this State. The title is "An Act—Telegraph
companies shall show conspicuously on each and every tele-
gram delivered the time it was filed for transmission, and
the time it was received at its destination." It then pro-
ceeds: "Be it enacted by the people of the State of Maryland,
represented in the General Assembly."

If we were passing on this provision for the first time, we might hestiate to hold that it was not mandatory—especially in view of the conclusions reached by many other Courts in construing similar provisions. There is certainly much to be said in favor of a strict compliance with a clause in the constitution which uses such plain, comprehensive language as this one does, although when we remember that every bill before it becomes a law must be sealed with the Great Seal of the State and be presented to the Governor, who, if he approves it, is required to sign it in the presence of the presiding officers and chief clerks of the Senate and House of Delegates, and other safeguards provided, it must be admitted that there is something to be said on both sides of the question.

But the case of *McPherson* v. *Leonard,* 29 Md. 377, is conclusive of this, unless it has been overruled, as contended by the appellant. In the enacting clause of the statute then before the Court the words "by the General Assembly of Maryland" were omitted, but the Court held: "Being satisfied that the words 'by the General Assembly of Maryland' are not of the essence and substance of a law, but their use directory only to the Legislature, we cannot, because of their omission from the enactment, declare the law in question unconstitutional and void." JUDGES BARTOL, BRENT, ROBINSON, STEWART and MILLER sat in that case and the two last named dissented. The only expression we find in our later decisions which can be said to at all weaken the effect of the deliberate judgment of a majority of the judges who sat is that used by JUDGE MILLER, in *Archer* v. *State,* 74 Md. 449. In discussing a wholly different provision of the constitution (Art. 6, sec. 5, which declares that the Treasurer shall qualify within one month after his appointment by the Legislature) JUDGE MILLER said: "We cannot regard the case of *McPherson* v. *Leonard,* 29 Md. 377, as a controlling authority the other way. Two of the five judges by whom that case was decided dissented, and it has not been followed in any subsequent decision," but it had not been overruled,

modified or questioned, and JUDGE STEWART who was the other dissenting judge in that case said, in a dissenting opinion in *Maxwell* v. *State,* 40 Md. 302: "It is true there was a division of the Court upon the subject, but the judgment of the Court stands as the established law of the State, to govern in the construction of the laws."

The expression used by JUDGE MILLER, in a case which in no wise involved the construction of this particular clause, cannot be held to have overruled *McPherson* v. *Leonard.* JUDGE BRENT, in delivering the opinion in that case, referred to the fact that a number of laws had been found upon the statute books of the State from 1777 to 1864 involving important rights, and the brief of the counsel for McPherson cited a number from which the words "by the General Assembly of Maryland" had been omitted, and during the forty years since that decision there have doubtless been others. It might therefore do great injustice to those who relied on, and had the right to rely on a decision of this Court, to hold that it had been overruled by a case which in no manner involved the clause in question, and we cannot so hold.

That being so, there can be no doubt that this enacting clause must be held to be sufficient. The people of the State of Maryland are represented in the General Assembly. "The Legislature shall consist of two distinct branches—a Senate and a House of Delegates—and shall be styled the General Assembly of Maryland," Art. 3, sec. 1, of Constitution. And by Art. 7 of the Declaration of Rights it is declared: "That the right of the people to participate in the Legislature is the best security of liberty and the foundation of all free government; for this purpose elections ought to be free and frequent, and every male citizen having the qualifications prescribed by the Constitution ought to have the right of suffrage." So without further discussion of that branch of the case, our conclusion is that the law is not invalid by reason of the enacting clause.

2. This brings us to the construction of the Act, which is in these words:

"Section 1.  Telegraph companies engaged in the business of transmitting communications by telegraph in the State of Maryland, and charging tolls therefor, shall show conspicuously on each and every telegram delivered the time it was filed for transmission and the time it was received at the office from which it is to be delivered.

"Sec. 2.  The time of filing the telegram at place of origin and the time received at destination of each and every telegram transmitted, as provided in section 1, shall appear on each and every telegram under the captions 'Time Filed' and 'Time Received.'

"Sec. 3.  Failure to comply with the provisions of sections one (1) and two (2) of this Act shall be punishable by a fine of not less than ten dollars ($10.00), nor more than two hundred dollars ($200.00) for each and every telegram delivered in violation of said sections one (1) and two (2)."

We are of the opinion that the Act is mandatory, and its provisions cannot be waived by the sender, so as to relieve the company from a prosecution by the State.  The statute does not, as is sometimes done, impose a penalty to be recovered by the injured party, but it makes the violation of its provisions a criminal offense, punishable by a fine which is recoverable by the State.  The sender of the message, therefore, has no more authority to relieve the company from such prosecution than he would have to prevent, by his act, any other prosecution for the violation of a statute.  The time a telegram is filed for transmission and the time it was received may be of much more importance to the person to whom it is addressed than to the sender.  In *W. U. Tel. Co.* v. *Lehman*, 105 Md. 442, for example, Lehman & Bro., to whom the telegram was addressed, were the sufferers, and if a statute such as this had been complied with they would have had the company's own record in their possession to show negligence.  Even a cursory reading of any law book on telegrams will suggest many instances of the importance to the addressee of such information.  There may be cases in which the public at large is interested in having such facts, particularly in criminal cases

where the precise time of sending or receiving telegrams some-
times becomes important. Such a record as is required by the
statute would undoubtedly have a tendency to make the oper-
ators and messenger boys more prompt in sending and deliv-
ering messages, and the notations on the telegrams delivered
would, in the event of alleged negligence on the part of the
companies, oftentimes furnish those interested with informa-
tion which it is not always easy to obtain.

The date of mailing and the time of receipt of letters must
be of some practical use, as otherwise the United States Gov-
ernment would not have continued stamping them so long, and
if a penalty was imposed on a postmaster for not so stamping
letters, it could hardly be said that he would be excused by
proving that the sender of the letter had waived it. It might
mitigate the punishment, but would not excuse the violation
of the statute. So although this statute does not disclose the
special reasons which influenced the Legislature to pass it,
we can readily see that such regulations may be of great im-
portance to those having occasion to send or receive telegrams,
and certainly cannot be said to be so unreasonable that the
Courts would be justified for that reason in refusing to en-
force it.

3. It is also clear that the Legislature did not intend that
such notations should be at the expense of the sender of the
message. Before the statute was passed the sender could
have included in the message the hour he delivered it for
transmission, and if there was any difficulty in his furnish-
ing the addressee with the time of its receipt, that was some
cause for the statute. A record of the time of transmission
and the time of receipt need not be burdensome. "349 A"
or "349 P" would be sufficient to enable one operator to in-
form the other, and the latter could note the time of its receipt
in a few seconds  Telegraph companies usually charge as
much for one word as for ten, and as much for a telegram ad-
dressed to or sent by a person who has a very short name, as
if sent to or by one who has a very long name. They doubt-
less prefer full addresses, which will enable them to readily

find the addressee, to those so indefinite as to make the delivery difficult.

A telegram showing quick dispatch is a good advertisement for the company. It is well known that the long-distance telephone is frequently resorted to because of delays in transmitting and delivering telegraph messages, and as telephone companies are in competition with telegraph companies, it is not easy to see why the latter would object to such records as these, if they will make their service more prompt and efficient, unless it be that they are not willing to give their patrons information which will disclose negligence on their part, if there be any. If such be the object, then unquestionably the public interest is involved in such a requirement as this statute makes. Much of the recent legislation by Congress affecting railroad companies has added materially to the expense of conducting their business, without additional profit to the companies, but in so far as it is reasonable and proper for the protection of the public against discrimination or other injustice, or even for the public convenience, it has often been sustained.

It is said in the brief of the appellant that the right of the company to charge for what is there called "the time filed" is not involved in this appeal, but the second plea expressly relied on the fact that the sender of the message refused to pay for the extra words, and that the company was not required to transmit the extra words without charge. We think that the statute clearly contemplated that the information as to the time filed shall be transmitted without additional charge to the sender of the message and that that is not an unreasonable regulation.

4. Nor do we find any difficulty in sustaining this judgment on account of the commerce clause in the Federal Constitution. In the first place, the indictment in each count relates to a telegram sent from Annapolis to Baltimore— wholly within the State. There can no longer be any question about the right of a State to make reasonable regulations, to affect messages sent and delivered in the State, although

the company may also be engaged in interstate business, and we are of the opinion that this statute must be construed to have been intended to apply only to intra-State messages. It requires the company to "show conspicuously on each and every telegram *delivered* the time it was filed for transmission and the time it was received." The State of Maryland could not impose a penalty on a telegraph company for delivering a telegram in New York which did not so show, and it could not impose a penalty for delivering a telegram sent from New York which did not disclose the time it was filed for transmission and the time it was received. If one State undertook to prohibit the delivery of a telegram sent from another State, unless it had such indorsement on it, that would clearly be an interference with interstate commerce. The State from which it was sent might impose different regulations from the one to which it was sent, and might prescribe a wholly different form from that required by the statute at the place of destination. It might lead to great confusion if different States passed statutes on such subjects, which would materially interfere with interstate messages.

But this statute does not undertake to require telegraph companies to show on every telegram sent from within the State the time it was filed for transmission, but to show on "each and every telegram *delivered*"——meaning, of course, delivered in Maryland, as a telegram delivered in New York without these requirements could not be a violation of the statute, for the simple reason that it would be beyond the jurisdiction of Maryland. Whether or not a statute requiring telegraph companies to keep or send a record of the time each telegram is received for transmission in this State would be valid, as affecting interstate messages, is not involved in this case, because this statute does not so require; but if the statute must be construed to mean that no telegram can be delivered in this State, which was sent from another State, without subjecting the company to a criminal prosecution for the absence of such notation, then we would hold it to be contrary to the commerce clause. One illustration of the effect

·of such construction is sufficient.  Suppose a company re-
·ceived for transmission a message in California, and, without
stating the time it was filed, sent it to B Company in Mis-
·souri, to be forwarded by it to Maryland.  If B company was
required to wire back to A Company in California to find out
the time it was filed for transmission before it could transmit
it to Maryland, the great delay thereby caused would be a man-
ifest interference with interstate business.  It might be possi-
ble that after the Missouri agent had wired back to California
to get the information, there was no such record there of the
time as would be a compliance with this statute.

The Supreme Court of the United States in *Western Union
Tel. Co. v. James,* 162 U. S. 650, held that a statute of Geor-
gia which imposed a penalty upon a telegraph company for
failure to deliver impartially, in good faith and with due dili-
gence a message sent from another State to a person in Geor-
gia was a valid exercise of the police power of the State, and
not in violation of the commerce clause of the Federal Consti-
tution.  The Court said: "The statute in question is of a na-
ture that is in aid of the performance of a duty of the com-
pany that would exist in the absence of any such statute, and it
is in no wise obstructive of its duty as a telegraph company.  It
imposes a penalty for the purpose of enforcing a general duty
of the company."  Again, it was said: "Nor is the statute open
to the same objections that were regarded as fatal in *West-
ern Union Telegraph Co. v. Pendleton,* 122 U. S. 347.  No
attempt is here made to enforce the provisions of the State
statute beyond the limits of the State, and no other State
could, by legislative enactment, affect in any degree the duty
of the company in relation to the delivery of messages within
the limits of the State of Georgia.  No confusion, therefore,
could be expected in carrying out within the limits of that
State the provisions of the statute."

In *Hart* v. *State,* 100 Md. 595, we cited many, and quoted
at length from some, of the decisions of the Supreme Court
relating to the attempted regulations by States of common
carriers engaged in interstate business, and we need not pro-

long this opinion by again doing so to such an extent. Those decisions have recognized the right of States, in the exercise of their police power, to pass laws to protect the public health, the public morals or the public safety, and "the power exists in each State by appropriate enactments not forbidden by its own or the federal constitution to regulate the relative rights and duties of all persons and corporations within its jurisdiction, so as to provide for the public convenience and the public good," and "the power of the State by appropriate legislation to provide for the public convenience stands upon the same ground as its power by appropriate legislation to protect the public health, the public morals, or the public safety." *Lake Shore, etc., Co.* v. *Ohio,* 173 U. S. 285. They also concede that "Legislation which is a mere aid to commerce may be enacted by a State, although at the same time it may incidentally affect commerce itself." *West. Union Tel. Co.* v. *James, supra.* But in none of those cases, or others that we are aware of, has the Supreme Court recognized the right of a State to make such legislation as that now before us, if applicable to interstate commerce. As is said in the note to *Postal Telegraph Co.* v. *Umstadter,* 2 Am. & Eng. An. Cases, 513 (S. C. 103 Va. 742): "Communication by telegraph is commerce as well as in the nature of postal service and is interstate commerce when carried on between different States, consequently it is directly within the power of regulation conferred upon Congress and free from the control of State regulations except such as are strictly of a police character. *Leloup* v. *Mobile,* 127 U. S. 645."

In *Hart* v. *State, supra,* we held that the statute then under consideration which required carriers of passengers to provide separate cars for the transportation of white and colored passengers was unconstitutional, in so far as it related to interstate passengers, but was valid in so far as it applied to intrastate passengers. That could be done in reference to this statute, if it included both classes of telegrams, but for the reasons stated we are of opinion that the statute was only intended to be applicable to those sent from and delivered to

points within the State, and such is our construction of it. It follows that the judgment will be affirmed, as this was an intrastate message.

> *Judgment affirmed, the appellant to pay the costs above and below.*

BRISCOE, J., dissents as to what is said of case of *McPherson* v. *Leonard.*