# THE STATE OF MARYLAND, TO THE USE OF THE COUNTY COMMISSIONERS OF PRINCE GEORGE'S COUNTY *vs.* THE BALTIMORE AND OHIO RAILROAD COMPANY.

*Constitutional Law—Enacting Clause of Statute—Special Law Relating to Subject Regulated by Existing General Law.*

Constitution, Art. 3, sec. 29, directs that "the style of all laws of this State shall be, Be it enacted by the General Assembly of Maryland." *Held,* that his provision is directory and not mandatory, and that an Act of the Legislature in which the words "by the General Assembly of Maryland" are omitted after the words "Be it enacted," is not thereby rendered void.

A special law is one that relates to particular persons or things of a class as distinguished from a general law which applies to all persons or things of a class.

Constitution, Art. 3, sec. 33, provides that the General Assembly shall pass no special law for any case for which provision has been made by an existing general law. Code, Art. 23, sec. 283, contains general provisions prescribing the conditions under which railroad companies throughout the State may be required by County Commissioners to protect the highways crossing the railroad track, at grade, by flagmen, or safety gates, or electric bells, etc. The Act of 1908, Chap. 398, directed that a certain railroad company should erect and maintain safety gates with flagmen at two designated crossings of its tracks in a certain county under a daily penalty for failure to comply with the Act. In an action by the County Commissioners to recover the penalties, *held,* that this Act of 1908 is unconstitutional and void, because it is a special law making particular provisions for two railway crossings of the same kind as provided for in the general law then in force.

*Decided April 20th, 1910.*

Appeal from the Circuit Court for Prince George's County (BRISCOE, C. J.).

The cause was argued before BOYD, C. J., SCHMUCKER, BURKE and THOMAS, JJ.

*Fillmore Beall,* for the appellant, submitted the cause on his brief.

*Jas. A. C. Bond,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

This suit was brought in the name of the State of Maryland to the use of the County Commissioners of Prince George's County, against the Baltimore and Ohio Railroad Company, to recover fines to the amount of eight hundred and fifty dollars, for the failure of the defendant to comply with the provisions of the Act 1908, Chapter 398, requiring the company to erect and maintain safety gates and to keep

flagmen at certain public road crossings in said county. The Act is as follows:

Section 1. *Be it enacted,* That the Baltimore and Ohio Railroad be and it is hereby required within thirty days after the passage of this Act, to erect and maintain safety gates at "Riversdale" and "Mistletoe Springs," in Prince George's County, where the county roads of said county cross the tracks of said railroad company at said places, and to cause a flagman to be stationed at each of said crossings between the hours of 6 o'clock A. M. and 9 o'clock P. M. to operate said gates and to warn persons using said crossings of the approach of trains upon said railroad.

Section 2. *And be it enacted,* That the said Baltimore and Ohio Railroad Company shall be liable to pay a fine of twenty-five dollars for each and every day it shall fail to comply to the provisions of the preceding section, said fine to be reserved (*doubtless meaning recovered*), in the name of the State of Maryland to the use of the County Commissioners of Prince George's County, in the Circuit Court of the said county or before a justice of the peace thereof, when the amount of said fines does not exceed the jurisdiction of the justice of the peace, and when collected to be paid in the road fund of said county, and in any such proceedings service upon a ticket agent of said company shall be sufficient service upon said railroad company.

Section 3, provides that the Act shall take effect from the date of its passage. It was approved April 6, 1908, and the declaration, which sets out the provisions of the Act, alleges that the defendant neglected and refused to erect and maintain safety gates and to cause flagmen to be stationed at said crossings for thirty-four days, from the 6th day of May, 1908, to the time of the bringing of the suit, and that by reason thereof the defendant became and is indebted to the plaintiff in the sum of eight hundred and fifty dollars. The defendant demurred to the declration, the Court below sustained the demurrer and gave judgment for the defendant, and from that judgment the plaintiff has appealed.

The appellee contends that the Act is unconstitutional, first, because of the omission from the enacting clause of the words "by the General Assembly of Maryland," and, secondly, because it is a special law for a case for which provision is made by an existing general law.

1. Section 29 of Article 3 of the Constitution of Maryland, directs that "The style of all laws of this State shall be, 'Be it enacted by the General Assembly of Maryland.'" The effect of this provision of the Constitution was carefully considered in the case of *McPherson* v. *Leonard,* 29 Md. 377, where it was held to be directory and not mandatory. In that case, as in this, the words "by the General Assembly of Maryland" were omitted from the Act, and JUDGE BRENT, speaking for the majority of the Court, said: "We have very carefully considered and anxiously weighed and examined the question now before us, and cannot regard the provision requiring the words, "by the General Assembly of Maryland," to be in the enactment of a law, as otherwise than directory to the Legislature to secure, as we have before said, uniformity in the laws. They certainly are not of the essence of the law. They furnish no aid in its construction, and its provisions are as clear and intelligible without them, as they would be with them." He further said: "Being satisfied that the words 'by the General Assembly of Maryland' are not of the essence and substance of a law, but their use directory only to the Legislature, we cannot, because of their omission from the enactment, declare the law in question unconstitutional and void."

It is urged, however, by learned counsel for the appellee, that *McPherson* v. *Leonard* was overruled in *Archer et al.* v. *State,* 74 Md. 448, but in the very recent case of *Postal Tel. Co.* v. *State,* 110 Md. 608, which was decided after the ruling of the learned Court below on the demurrer in this case, and where the Court was considering the same provision of the Constitution, we held that *McPherson* v. *Leonard* "had not been overruled, modified or questioned." CHIEF JUDGE BOYD, referring to *Archer's Case,* said: "The expres-

sion used by JUDGE MILLER, in a case which in no wise involved the construction of this particular clause, cannot be held to have overruled *McPherson* v. *Leonard*. JUDGE BRENT, in delivering the opinion in that case, referred to the fact that a number of laws had been found upon the statute books of the State from 1777 to 1864 involving important rights, and the brief of the counsel for McPherson cited a number from which the words 'by the General Assembly of Maryland' had been omitted, and during the forty years since that decision there have doubtless been others. It might, therefore, do great injustice to those who relied on, as they had a right to rely on a decision of this Court, to hold that it had been overruled by a case which in no manner involved the clause in question, and we cannot so hold."

It is true, in the *Postal Tel. Co. Case,* the language of the Act was: "Be it enacted by the people of the State of Maryland, represented in the General Assembly," and the Court said: "The people of the State of Maryland are represented in the General Assembly," but we distinctly adhered to the decision in *McPherson's Case,* and held that the provision of the Constitution here relied on is not mandatory, and that a failure to follow the form prescribed does not render an Act unconstitutional and void. So, whatever may be the conclusions reached by other Courts in construing similar provisions, it must now be regarded as the settled law of this State, that the words prescribed in the clause referred to are not essential to the validity of an Act.

2. The other objection to the Act in question we think is well founded. Section 33 of Article 3 of the Constitution of this State, expressly provides that "The General Assembly shall pass no special law for any case for which provision has been made by an existing general law." A special law is one that relates to particular persons or things of a class, as distinguished from a general law which applies to all persons or things of a class. In *Baltimore City* v. *Allegany County,* 99 Md. 1, JUDGE PEARCE said: "In *Cooley's Constitutional Limitations,* 165 note, it is said: 'The term *general,*

when used in antithesis to *special,* means relating to *all* of a class, instead of to *persons* only, of that class.' " In the case of *Schmalz* v. *Wooley,* 56 N. J. Eq. 649, 39 Atl. 539, the Court said that where a statute "does not relate to persons or things of a class, but to particular persons or things of a class, it is a special, as contradistinguished from a general law." And in Vol. 7 of Words & Phrases, 6578, it is said: "Special laws are those made for individual cases, or for less than a class requiring laws to its peculiar conditions and circumstances."

The obvious meaning of this provision of the Constitution is, that where there is a general law providing for a certain class of cases, the Legislature shall not pass a special law for any particular case of that class. As said by JUDGE ALVEY, in *State* v. *County Commissioners of Balto. Co.,* 29 Md. 516: "The special laws contemplated by the Constitution, are those that provide for individual cases," and the object of this provision "was to prevent the abuses that occurred in the great multiplicity of legislation for particular and individual cases."

Now Section 283 of Article 23 of the Code (1904), provides that, "Whenever the several railroads of this State, operated by steam, shall cross any public highway at grade outside the corporate limits of cities, and any such highway shall be believed to be of such a character as to render the passage of locomotives and trains thereon dangerous to life and property, it shall be the duty of the commissioners of the county in which such point of crossing shall be located, to notify the company owning or operating the railroad at such point, by serving a written notice on the superintendent or other agent of such railroad company in said county, that the said county commissioners will, thirty days thereafter, consider the necessity of further protection against danger at said crossing; and if, after the expiration of said thirty days said county commissioners, or a majority of them, shall determine that such protection is necessary, they shall notify said railroad company through its superintendent or ticket

agent in said county, that within sixty days thereafter, said railroad company shall either place a flagman at said crossing, whose duty it shall be to give timely notice to all persons using said crossing, of the approach of all locomotives or trains, or a system of electric alarm bells, to give such notice at the approach of trains, or shall erect safety-gates at said crossing, which shall be closed not less than one-half minute before the passage and during the passage of every railroad train or locomotive across said highway; or shall change the said grade crossing so as to pass said highway with and under or over grade crossing, in which case neither a flagman nor safety-gates shall be required."

Section 284 of the same article of the Code, provides that if any railroad company shall neglect or refuse to comply with the requirements of the county commissioners, it "shall be liable to a fine of twenty-five dollars per day for each and every day it shall neglect or refuse so to do." Here, then, is a general law, making provision for the protection of those using the crossings of railroads and the public roads of the State, and applying to all railroads and to all crossings of the kind described, and, as was said in *N. C. Ry. Co.* v. *Medairy,* 86 Md. 168, providing ample means "for the protection of the rights of the public as well as those of the company." The Act of 1908 relates to two particular crossings of the same class, and is clearly an attempt by a special law to provide for two cases for which provision is made by the general law. In the case of *Baltimore City* v. *Allegany County, supra,* an Act which provided that shares of stock in corporations of Allegany County should be assessed and taxed in said county to the corporations, was held to be unconstitutional, because it was a special law relating to the taxation of shares of stock in corporations in said county, while there was a general law providing "for the taxation of shares of stock in the hands of the owners and to the owners, at their places of residence." In *Baltimore City* v. *Starr Church,* 106 Md. 281, the Act of 1904, Chapter 263, exempting from taxation certain property belonging to the

Minister and Trustees of the Starr Methodist Protestant Church, was held to be void because it was special legislation relating to the exemption of the property of said church, while there was a general law providing for the exemption from taxation of certain property belonging to religious corporations.

The cases cited by the appellant do not sustain the law in question in this case. In *Com. of P. G. Co.* v. *Com. of Laurel*, 51 Md. 457, the Act which required the County Commissioners of Prince George's County to pay to the Commissioners of Laurel certain taxes levied upon property within the corporate limits of Laurel, was held to be a public local law and not a special law. The distinction between a public local law and a special law has been uniformly recognized in this State. Local laws "apply to all persons within the territorial limits prescribed by the Act," while a special law applies to particular persons or things of a class. *State* v. *County Comm's Balto. Co., supra; Herbert* v. *Baltimore County*, 97 Md. 639; *Baltimore City* v. *Allegany Co., supra.* In the case of *Revell* v. *Annapolis*, 81 Md. 1, CHIEF JUDGE ROBINSON, in answer to the objection that the law there considered was in conflict with section 33 of Article 3 of the Constitution, said: "The General Law provides, it is true, that the School Commissioners of Anne Arundel County shall have the control and supervision of the public schools in said county, with power to build, repair and furnish school houses. But it does not authorize the commissioners to borrow money upon bonds to be endorsed by the County Commissioners for such purposes, nor does it provide for the apportionment of the cost of a public school building to be erected in the city of Annapolis, between the county and the city. This could only be done by special Act, and this being so, the special Act is not in conflict with the Constitution, which forbids the passing of a special Act for any purpose for which provision has been made by an existing General Law."

The Act of 1908 provides, for the two crossings referred to in the Act, the same protection that the county commissioners are authorized, by the general law, to require whenever, in their judgment, it is necessary.

The authority of the General Assembly to enact proper provisions for the protection of those using the crossings of the railroads and public roads in the State cannot be questioned, but when that is done by a general law, the Legislature cannot, in view of the constitutional prohibition, pass special laws making like provision for particular crossings of the kind provided for in the general law.

It follows from what has been said that the judgment of the Court below must be affirmed.

*Judgment affirmed with costs.*