CEPHALIS, ETC. *v.* BRISCOE, ADMINISTRATOR

[No. 155, October Term, 1952.]

*Decided May 15, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Marion A. Figinski,* for appellant.

*Edward W. Kreutzer,* for appellee.

HAMMOND, J., delivered the opinion of the Court.

The question to be answered in this appeal from the Orphans' Court of Baltimore City is whether a boy over eighteen, but under twenty-one, has the legal capacity to be named administrator of his father's estate.

Anthony Cephalis died, intestate, on May 26, 1952, survived by only one child, Stanley, who was then over eighteen years of age. The decedent and his wife were divorced at the time of his death, and he had been living with a sister, Pauline Ostrowski. The son was self-supporting and did not live with them.

Five days after the death of his father, the son wrote a letter to his aunt, requesting that she give him information as to any money or other property the decedent had so that he would be in a position to apply for letters of administration. Having received no reply, he made inquiry, through his attorney, at the Orphans' Court and learned that on May 29, 1952, three days after the date of death, letters of administration had been granted to Philander B. Briscoe, a lawyer of Baltimore, on the renunciation of his aunt; the renunciation

had included an allegation that the son was but seventeen years of age. Within a few days, Stanley filed a petition in the Orphans' Court, praying that the letters granted to Philander B. Briscoe be revoked, "as they were granted not according to law, . . ." and that the son, as the only child of the decedent, be granted letters of administration, "as he is entitled under the law to his said father's estate and entitled to Letters of Administration upon the Decedent's estate." On this petition, the Court, on June 14, 1952, passed an order that the letters of administration heretofore granted to Philander B. Briscoe on the estate of Anthony Cephalis, deceased, "be and the same are hereby revoked, unless cause to the contrary be shown on or before 24 day of June, 1952, . . .".

Shortly thereafter, the administrator filed his answer, urging that the petition be dismissed because the petitioning infant had no valid claim to appointment, could not qualify as administrator, has not obtained a bond and could not obtain a bond, and could not legally take the oath of office.

In spite of the filing of the petition and the passage of the order to show cause, the administrator, in August, 1952, filed a first and final administration account, showing a total estate of some $2,000.00, all of which was consumed by a counsel fee, costs, and payment of claims to the aunt and her husband. Exceptions were filed by the appellant to the account on the grounds that the administrator was illegally appointed, and that no notice had been given to the appellant, who was entitled to letters as a matter of right. Specific exceptions were filed to the counsel fee, the commissions of the administrator, and the payment of the claims, as well as generally to each and every item of the account. In January, 1953 the Orphans' Court dismissed the petition to remove the administrator and the exceptions to the account.

The administrator, at the argument, explained that no disbursements had been made according to the account, which had been passed to expedite an orderly settlement of the estate and to dispose of the pending

claims, and that all the assets of the estate were being held, awaiting the disposition of this appeal.

It is apparent that the fundamental inquiry is whether Stanley Cephalis, the son, could have been legally appointed administrator. If a boy over eighteen, but under twenty-one, can qualify as administrator, the son in this case had an absolute right to be granted letters. Where there is only one individual, otherwise qualified, who answers the statutory description of a person entitled, the Orphans' Court must appoint him. *Sullivan v. Doyle,* 193 Md. 421, 67 A. 2d 246; *Stouffer v. Stouffer,* 110 Md. 368, 72 A. 843; and Bagby, *Maryland Law of Executors and Administrators,* Sec. 38.

If Stanley Cephalis should have been granted letters as a matter of right, the grant of the letters to Philander B. Briscoe should be revoked, and the administration of the estate can then start afresh, to be conducted by the new administrator under the law in such manner as he deems necessary or appropriate.

We think the legislative intent to make a boy over eighteen legally competent to qualify and serve as an administrator is clear and convincing.

Article 93, Section 20 of the Code (1951 Ed.) provides:

"The qualifications of an administrator shall in all respects be the same as herein prescribed for an executor, and all questions touching such qualifications shall be tried and determined by the same proofs and in like manner."

The qualifications of an executor are set forth in Section 58 of the same Article:

"If any person named as executor in a will shall be, at the time when administration ought to be granted, under the age of eighteen years or of unsound mind, incapable according to law of making a contract, or convicted of any crime rendering him infamous according to law, or if any person named as executor shall not be a citizen of the United States, letters testamentary or of administration (as the case may re-

quire) may be granted in the same manner as
if such person had not been named in the will."

The appellee contends, nevertheless, that the appellant cannot qualify as administrator because he is "incapable according to law of making a contract" and thus cannot execute a bond.

We think this contention is shown to be unsound by the context of the quoted phrase, the history of Section 58, and finally, by the language of other sections of Article 93, read as they and Section 58 must be read under the applicable rules of interpretation of the Code.

Section 58 puts those disqualified to act as executor in four separate and disjunctive categories: (1) under eighteen; (2) of unsound mind to the point of being incapable according to law of making a contract; (3) convicted of an infamous crime; (4) not a citizen. The phrase in number two, "incapable according to law of making a contract" modifies only "of unsound mind", and not any other of the categories; it has no meaning, significance or effect apart from the phrase to which it is appended.

This is shown by Chapter 101 of the Acts of 1798, the early comprehensive act dealing with wills and the settlement of estates, now codified as Article 93 of the Code. In that statute, sub-chapter 4, Section 1, dealt with those who could not act as executors and set out the four identical categories, including as number two: "or of unsound mind, incapable according to law of making a contract". Sub-chapter 5, Section 1 of the Act of 1798, spelled out who could not be an administrator. It said: "No letters of administration shall be granted to a person infamous as aforesaid, or to an idiot, lunatic, or person *non compos mentis,* or to a person who is not a citizen of the United States, or under eighteen years of age; and any question respecting infamy, soundness of mind, citizenship or age, may be heard and established as if the same respected a person named as an executor." Codification eliminated the quoted language, and Section 20 of Article 93, relating

the qualifications of an administrator to those of an executor, took its place. Certainly, however, the terms "idiot, lunatic or person *non compos mentis*" in sub-chapter 5, section 1, in the Act of 1798 are used as synonyms for the phrase "of unsound mind, incapable according to law of making a contract", found then in sub-chapter 4, section 1, and now in Section 58 of Article 93.

The appellee grants that an executor over eighteen but under twenty-one, whether male or female, and an administratrix of the same age, may validly execute a bond, but says that this is only because the statutes expressly say so. Section 65 of Article 93 says: "In case letters testamentary shall be granted to an executor above eighteen and under twenty-one years of age, the bond executed by him for faithful performance shall be binding as if he were full age." The preceding section says that a married woman shall be entitled to letters as if unmarried and that the bond of an unmarried executrix or administratrix eighteen years of age or over shall be binding "in the same manner as if she were of the full age of twenty-one years."

Section 5 of Article 1 of the Code (1951 Ed.) provides: "Whenever the word administrator is used in this code it shall include executor, and so *vice versa*, unless such an application of the term would be unreasonable." Section 6 of the same Article provides: "The word decedent means either a testator or person dying intestate. The appellee says that these rules do not extend the plain meaning of Section 65 of Article 93, so as to validate the bond of an administrator over eighteen but under twenty-one, because that Section refers to "letters testamentary", and an administrator executes letters of administration. It is significant that Article 93 provides a form of letters only for executors. This is found in Section 57. No form is provided for the letters of an administrator. This was true also in the Act of 1798, although that Act frequently refers to letters testamentary or of administration in the same sections. Judge

Sykes, in his book on *Probate Forms in Maryland,* gives a form of letters of administration, and as authority, cites Sections 17 and 57 of Article 93. Section 17 provides that when any person dies intestate, "letters of administration" may be granted by the appropriate Orphans' Court; and Section 57 provides: "the form of letters testamentary".

Section 42 of Article 93 provides: "Every administrator shall, before administration shall be granted to him, execute a bond to the State of Maryland . . .", and that ". . . said bond shall have the same condition annexed as herein prescribed for the bond of an executor; and said bond shall be recorded and be liable to be sued on, and be in all respects on the same footing as an executor's bond; . . ."

Section 44 of Article 93 provides: "Every administrator shall take the oath herein prescribed for an executor before administration shall be granted to him." The form of bond for both executors and administrators is set out in the same section of Article 93, namely, Section 54. This identity of the oath to be taken by both executor and administrator, and of the form of bond to be executed by them, stems from the Act of 1798, where in sub-chapter 3, there is used repeatedly in the same sections dealing respectively with bonds, and the conditions of bonds and the oath, (Sections 10, 11 and 12) the phrase, "executor or executrix, administrator or administratrix".

This Court has applied language of Article 93, purporting to deal only, in the Sections involved, with administration and administrators to a case where letters testamentary and an executor were present. In *Crow v. Hubard,* 62 Md. 560, 564, 565, the controversy was about a watch which the widow selected from the personal estate of her husband, by virtue of the provisions of Code (1860), Sections 291 and 292 of Article 93, which said that in every case where *administration* had been granted and the *administrator* had filed his inventory, the widow could make such selection. Those objecting

to the delivery of the watch to the widow argued that the Sections did not apply, since there was a will and letters testamentary had been granted. The Court said: "It is true, that the language of these sections speaks of 'all cases where administration shall be granted,' but we are of opinion that the sections apply to cases such as this, where there is a will, as well as to cases of intestacy. In the original Act, passed in 1849,* the terms used are 'in all cases where letters testamentary or of administration are granted.' When this Act was codified, a change in the phraseology was made, but no change was intended to be made in its operation and effect. One of the objects sought by codification, was the rejection of all superfluous verbiage, and the obtension of a compact but intelligible statement of the law. In furtherance of this object, the codifiers prefixed to their work certain rules of interpretation as a guide to the meaning of terms used. Among these rules, we find one saying that wherever in the Code the word 'administrator' is used, it shall include 'executor,' and so *'vice versa'*, unless such application would be unreasonable; and another rule that the word 'decedent' means either a testator or a person dying intestate. Interpreting the Code by the rules so laid down by its authors, sec. 291 of Art. 93 would read thus: 'In all cases where administration shall be granted, and an inventory and appraisement of the personal estate of the decedent, (whether a testator or intestate,) shall have been returned by the administrator (or executor,) to the Orphans' Court,' . . ."

Under the holding of this case and the rules of interpretation, Section 65 of Article 93 is to be considered as if it read: "In case letters testamentary or of administration shall be granted to an executor or administrator, as the case may be, above eighteen and under twenty-one years of age, the bond executed by him . . . shall be binding as if he were full age." We think

---

* Reporter's Note: Laws of 1849, ch. 543, secs. 1-2.

that to so read Section 65 is fully warranted by the clear intention of the Legislature to put an executor and an administrator on an equal footing, and that the bond of an administrator over eighteen but under twenty-one, would, as Section 42 of Article 93 puts it: ". . . be in all respects on the same footing . . ." as the bond of an executor of the same age.

The conclusion is fortified by the provisions of Section 20 of Article 93, to which we have referred, that the qualifications of an administrator shall be in all respects the same as those prescribed for an executor. Qualifications include attributes, natural and legal, which render a person admissible to or acceptable for a place, an office, or an appointment, but there may be, and we think here there is, more. Qualifications include not only eligibility to serve but ability to qualify. *Archer v. State,* 74 Md. 443, 22 A. 8; and *State ex rel. Evans v. Wheatley,* 197 Ark. 997, 125 S. W. 2d 101. Before one having all the necessary attributes can become an executor or administrator, he must qualify by filing a bond and taking the requisite oath. Thus the qualifications, or the absence of disqualification, of an executor over eighteen but under twenty-one include the legal ability to execute a valid bond and take a binding oath. If the qualifications of an administrator are to be the same as those of an executor, as the statute says they are, a boy between the ages of eighteen and twenty-one must likewise be able to meet these valid prerequisites. It would be taking a narrow and unreasonable view to suppose that the Legislature, which has said one cannot serve as an executor or an administrator until he files a bond, meant that a boy over eighteen but under twenty-one was eligible to serve as an administrator but lacked the legal ability to qualify. We think it clear that the same ability to qualify by oath and bond and thus complete the qualifications to actually serve, which the statute in so many words gives to the boy potential executor, extends equally to the boy potential administrator.

It is our conclusion that a boy over eighteen but under twenty-one, who is otherwise qualified, may be named an administrator of an estate, may take the necessary oath and validly and bindingly execute the required bond. It follows, therefore, that Stanley Cephalis was entitled as a matter of right to administer his father's estate and that the order of the Orphans' Court of June 29, 1952, appointing Philander B. Briscoe administrator, as well as its order of January 14, 1953, dismissing the petition requesting the revocation of the June order and over-ruling the exceptions to the administration account, were erroneous and must be reversed.

*Orders reversed, with costs.*