631 A.2d 102

**Joyace A. COURTNEY**

v.

**Valerie LAWSON.**

**No. 666, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Sept. 28, 1993.

Victor L. Crawford, Rockville, for appellant.

Joseph J. Trepel (Hannon & Trepel, on the brief), Silver Spring, for appellee, Lawson.

Timothy P. O'Brien (Fred R. Joseph and Joseph, Greenwald & Laake, P.A., on the brief), Greenbelt, for appellee, Goodloe.

Argued before WILNER, C.J., and MOTZ, and MURPHY, JJ.

WILNER, Chief Judge.

The testamentary law of Maryland sets forth an order of preference that the court must follow in appointing an administrator for an intestate estate. A decedent's child is preferred over the decedent's sibling, but the sibling is preferred over someone unrelated to the decedent. The law also, however, disqualifies a person under 18 from serving as administrator. The question before us is whether the mother of the decedent's minor child, who has also been appointed as guardian of the property of the child but who is not the surviving spouse of or otherwise related to the decedent, is entitled by virtue of her guardianship status to exercise the child's priority right to administer the decedent's estate in preference to the decedent's sister. In determining that question, we need to consider whether an administration *durante minoritate* is still authorized under Maryland law.

### Underlying Facts

The relevant facts are undisputed. On or about June 28, 1991, Burl Courtney was shot to death by one or more Prince George's County police officers as they were attempting to serve a warrant on him. He left surviving him two young children (Burl Lawson, age 11, and Tyler Courtney, a baby) and a sister (Joyace Courtney). Also surviving him were the mothers of his two children, Valerie Lawson (Burl's mother) and Donna Goodloe (Tyler's mother), neither of whom had he married. For the sake of convenience, we shall refer to the decedent as Courtney, to the children as Burl and Tyler, and to the other adults as Joyace, Valerie, and Donna, respectively. The only substantial asset in Courtney's estate is a cause of action against the police officers for assault and violation of his civil rights.

On June 11, 1992—about a year after Courtney's death—his sister, Joyace, filed a petition with the Orphans' Court for Prince George's County for administration of a small estate

and was issued letters of administration. She stated in her petition that the only asset in the estate was a cause of action against the police officers, and indeed, through counsel, she filed such an action in U.S. District Court in her capacity as administrator of the estate. At some point—when is not clear from the record before us—Valerie and Donna also filed actions in that court, these being wrongful death actions on behalf of their respective children. The three actions were eventually consolidated and, we are told, are still pending, awaiting the outcome of this litigation.

On July 24, 1992, Valerie filed an objection to Joyace's appointment, claiming that she, Valerie, as mother and next friend of Burl, had a higher priority to serve as administrator. She asked that her petition for administration, which was not attached to the objection and was not actually filed until October 16, 1992, be admitted to probate and that Joyace be removed as personal representative. We can find no indication in this record that Donna filed a similar petition in the Orphans' Court. Nonetheless, following a hearing on or about October 16, 1992, the court entered an order removing Joyace as administrator and appointing in her place Valerie and Donna as co-administrators. Joyace appealed to the Circuit Court.

During the pendency of the *de novo* appeal, Valerie and Donna filed formal petitions with the Circuit Court to be appointed personal representatives. In their petitions, each asserted her status to be that of the mother of Courtney's minor child. In subsequent memoranda, they also claimed to be the guardians of their respective children. Valerie, it appears, was appointed by the orphans' court as guardian of Burl's property in January, 1993. Donna's status remained solely as the mother and natural guardian of Tyler until sometime after the Circuit Court decided the case. We are informed that she later was appointed as guardian of Tyler's property *nunc pro tunc*. As additional grounds for the relief they sought, Valerie and Donna contended that Joyace had misrepresented certain facts concerning Courtney's residence

and that she was not an heir and therefore had no pecuniary interest in the estate.

All parties filed motions for summary judgment. Although Valerie and Donna pressed their contention that Joyace should be removed because of the false information she supplied, the real issue, which everyone agreed would be dispositive if decided in Valerie's and Donna's favor, was whether, under Md.Code Est. & Trusts art., § 5–104, they had a higher priority to be appointed administrators than Joyace. Section 5–104 sets forth an order of priority that the court is required to observe. We are concerned here with three of the priority classes—the second (the surviving spouse and children of an intestate decedent), the eighth (other relations of the decedent who apply for administration), and the eleventh (any other person). Valerie and Donna were claiming the second priority as parents and guardians of their respective children. Joyace, according to them, had at best the eighth priority. The reason Valerie and Donna were claiming the right derivatively was because Est. & Trusts art., § 5–105(b) specifically provides that letters of administration may not be granted to a person who, at the time a determination of priority is made, is under the age of 18, as their respective children each were. Their contention was that the children had priority over Joyace and that, as the parents and guardians of the children, they stood in the shoes of the children and were entitled to administer the estate.

On February 8, 1993, the court entered an order appointing Valerie and Donna as co-personal representatives of Mr. Courtney's estate, concluding that "[a]s the mothers and guardians of [Courtney's] minor children, [Valerie and Donna] stand in the shoes of their children and in that capacity have a direct interest in the outcome of Courtney's estate." The court found that, in that capacity, Valerie and Donna were in the second priority class and that Joyace, as the decedent's sister, was in the eighth priority class. Because it acted on that ground, the court did not address the issue of Joyace's fitness to be administrator. It noted that "the only apparent reason to name [Joyace] as personal representative of the

estate is to allow her to designate counsel to represent the estate in pending federal litigation." This appears to be the case; Joyace is not an heir and will receive nothing (other, possibly, than commissions) from the estate.

## The Issues

In this appeal, Joyace argues that the order of priorities stated in § 5–104 is binding on the court, that although there is a second priority for the minor child of the decedent, there is no priority for such a child's guardian or parent and no provision for a guardian or parent to assume the priority status of the child. Accordingly, she contends that, while she falls within the eighth listed priority, Valerie and Donna are within the eleventh. In response, Valerie asserts that, under the guardianship law, in particular Est. & Trusts art., § 13–206(c)(1), she stands in the shoes of her ward and is entitled to exercise the ward's property right to administer his father's estate. She argues that the child's right to letters of administration is a valuable property right and that § 13–206(c)(1) vests in her, as Burl's guardian, that property right. Donna joins in that argument but asserts, in addition, that she is entitled to administer the estate (with Valerie) by virtue of the common law right of administration *durante minoritate.*

The issues arising from these contentions are related; they involve, essentially, a question of statutory construction.

## Statutory History

### Pre–1969

Our discussion begins with a reference to the English law. Derived in part from Roman law, from tenure-based property law, from ecclesiastical law, and from various parliamentary enactments, the English law, by the mid-Eighteenth Century, came to recognize several forms of guardianship, most of which had as their objective the protection of minors and their property. *See* 1 Blackstone, *Commentaries* *460–466. Blackstone informs us that, except as to lunatics and idiots, the guardian performed the office of both the *tutor* and the

*curator* under Roman law—that is, he acted as a committee of both the person and the estate of the ward. The need for such laws, of course, was due not only to the presumed inability of children to fend for themselves in terms of food, shelter, education, and general nurturing, but also their legal inability to make contracts and hold and alienate property.

England also had by that time a well-developed testamentary law. Under that law, a child under a specified age was not permitted to assume the office of executor or administrator. Perhaps as a corollary to the device of guardianship, the law came to recognize the right of testamentary administration *durante minore aetate* or, as it has been called in Maryland, *durante minoritate.* Essentially, if a person named as an executor under a will or a person entitled to administer an intestate estate was under a certain age, an adult would be appointed as administrator *durante minore aetate* to administer the estate on his behalf. Halsbury tells us that if the child was over seven, he was considered a minor and was entitled to appoint his own guardian for the purpose of administering the estate, but that if the child was under seven, he was regarded as an infant and a guardian, usually his next of kin and most often his father, would be appointed for him. 14 Halsbury, *The Laws of England* § 432 (1910).

It is not entirely clear, based on the research we have been able to do, just when this special form of administration came into the law or how, precisely, it developed. The earliest cases we have discovered, dating back to the 1670's, recorded such administrations in situations where a minor was named as the executor in a will. *See,* for example, *Enbrin v. Mompesson,* H.T. 1670. K.B. 2 Lev. 37; *Brooking v. Jennings,* E.T. 1673. C.P. 1 Mod. 174; *Rockelly v. Godolphin,* H.T. 1681. K.B.T. Raym. 483; S.C. Skin. 214—all reported and abridged in 1 C. Petersdorff, *Abridgement of the Cases* 239 (1825). In *Lord Grandison v. Countess of Dover,* M.T. 1681. K.B. 3 Mod. 23; S.C. Skinner. 155, however, there is a reference to such an administration where the decedent died intestate. Petersdorff reports at 242 that the decedent "died intestate, leaving a sister an infant, whose great grandmother was assigned her

guardian, and thereupon she obtained administration *durante minore aetate.*" In *Colborne v. Wright,* H.T. 1679. K.B. 2 Lev. 240; S.C. Wm. Jones. 119, the Court, *per curiam,* held that "[w]here one of the executors is an infant, and cannot prove the will, administration *durante sua minoritate* may be granted to the other. . . ." The purpose for having the competent co-executor serve as administrator for the minor, according to the opinion, was to allow him to sue on behalf of the estate "because the other is not capable to prove the testament, and so not to join with him, and he cannot sue alone." Petersdorff at 242.

Although some of the English writers, in describing this special administration, speak of it only in the context of testate estates, where the minor is a named executor (*see,* for example, 2 Blackstone, *Commentaries* *503), there does seem to be clear authority in the cases and in the writings of the knowledgeable commentators that it was used as well in intestacy situations, at least where the minor was the decedent's next of kin. Indeed, the only significant distinction seemed to be that, where the minor was named as executor, the special administration lasted until he attained 17, whereas in an intestacy situation the administration lasted until the minor became 21. In his "English Notes" to *R. v. Bettesworth (Smith's Case),* K.B. 1731, 2 Str. 892, R. Campbell observes that "[a]dministration *durante minore aetate* was of two kinds: (a) In the event of testacy. (b) In the event of intestacy." He continues that "[a] grant of administration *durante minore aetate executoris* formerly lasted until the executor attained the age of seventeen; a grant *durante minore aetate administratoris,* until the general administrator attained the age of twenty-one." 2 R. Campbell, *Ruling Cases* 118 (1894). The same statement is made by Jacob: "No infant can act as executor till the age of 17 years; till which time, administration must be granted to some other *durante minore aetate* . . . And if the right of administration devolves on an infant, administration *durante minore aetate* is to be granted till he arrives at twenty-one." 2 G. Jacob, *The Law Dictionary* 504 (1811). And also by Comyns. 1 J. Comyns, *The Laws of England* 481 (1824).

That disparity appeared to end with the enactment of 38 Geo. III. c. 87 in 1798, when, in § 6 of that statute, Parliament provided that, where an infant is the sole executor, administration with the will annexed was to be granted to the infant's guardian, or such other person as the court thinks fit, until the infant became 21.

The guardianship laws and the device of testamentary administration *durante minore aetate,* as developed in England by 1776, became a part of Maryland law by virtue of art. 5 of the 1776 Maryland Declaration of Rights. That body of English law was repealed 22 years later, however, when, by 1798 Md.Laws, ch. 101, the General Assembly enacted the State's first comprehensive testamentary and guardianship law. In subchapter 12, the Legislature provided for the appointment by the orphans' court of a guardian for the property of any male under 21 or any female under 16 entitled to a legacy or a distributive share of an intestate estate, and it set forth fairly detailed requirements with respect to the guardianship. No express provision was made for a guardian to exercise his ward's right to act as executor or to be granted letters of administration in an intestate estate.

In subchapter 4, dealing with letters testamentary, the Legislature provided that a person under the age of 18 could not be granted letters testamentary or of administration and that, in such case, "letters testamentary, or of administration, (as the case may require,) may be granted, in the same manner as if such person had not been named in the will." In § 20 of subchapter 3, however, the General Assembly appeared to codify the right of administration *durante minore aetate,* at least where the decedent left a will. The section required a collector appointed in advance of the issuance of letters to turn over all property of the decedent in his hands to the person receiving letters testamentary or of administration, "unless in the case of the minority of the executor or executrix, then and in such case letters of administration, during the minority of such executor or executrix, shall be granted; the age of eighteen years to be considered as the age of majority for the purposes of this clause...."

This provision in subchapter 3 mentioned only the case of the minor being named as an executor. It was in subchapter 5 that the Legislature dealt with intestate estates. It repeated there, in § 1, that letters of administration could not be granted to anyone under 18 years of age. In succeeding sections, it set forth a priority for entitlement to such letters in which, as now, children of the decedent were placed in a higher priority category than siblings, and siblings, in turn, had priority over other relatives and persons. There was no parallel provision to subchapter 3, § 20 providing for letters of administration to a surrogate during the minority of a child who, but for his minority, would have been entitled to administer the estate. In § 7 of subchapter 5, however, the Legislature declared that the qualification of an administrator shall, in all respects, be the same as those of an executor "and the proceedings, to exclude such as *prima facie* appear entitled to the administration of the estate of an intestate, shall in all respects be the same as herein before directed for excluding any person named in a will as executor...." Whether this was initially intended to codify the common law device of administration *durante minore aetate* is not entirely clear.

Some of those provisions, in modified form, remain in the Maryland law today. As noted, Md.Code Est. & Trusts art., § 5–104 sets forth the priorities for letters and § 5–105 provides that letters may not be granted to a person under the age of 18. Two provisions that no longer exist, having been repealed in 1969, are (1) the direction in subchapter 4 that, where the executor named in a will was a minor, letters were to be granted as if he had not been named, and (2) the provision in subchapter 3, § 20 for an administration *durante minoritate*. (We shall use the term *minoritate* henceforth when referring to the Maryland law).

The most recent articulation of an administration *durante minoritate* was in Md.Code (1957), art. 93, §§ 74 and 76. Section 74 provided: "Administration durante minoritate of an executor may be granted by the orphans' court of the county wherein letters testamentary should be granted, and such administration shall last until the executor shall attain to the

age of eighteen years." Section 76 stated, in relevant part, that in all cases where administration *durante minoritate* was granted, the grant of letters testamentary or of administration operated as a revocation of that administration and it was thereupon the duty of the administrator *durante minoritate* to deliver up the decedent's property in his possession.

As was the case with the 1798 enactment, § 74 seemed on its face to be limited to testate estates, referring only to letters "testamentary" and to the minority of the "executor." The provisions of subchapter 5, § 7 of the 1798 law also remained extant, however, as § 21 of art. 93, and, in addition, art. 1, § 5 of the Md.Code stated that, whenever the word "executor" was used in the Code, it included "administrator." The actual nature of this form of administration—whether, for example, § 74 applied in cases of intestacy—does not appear to have been in much dispute, for in the 171 years of its statutory existence in Maryland, it does not seem to have been the subject of any appellate decisions or discussion. The only discourse on the right of a minor to letters of administration came in *Cephalis v. Briscoe*, 202 Md. 419, 96 A.2d 602 (1953), where, without mentioning in particular § 74, which was not directly involved in the case, the Court relied on art. 1, § 5 and art. 93, § 21 to hold that a decedent's child, who was over 18 but less than 21, could be granted letters of administration in an intestate estate notwithstanding the lack of a specific authorization, which was provided in the case of letters testamentary, for the child to execute a bond.

### After 1969

In 1969, the testamentary and guardianship laws were substantially rewritten, for the first time since 1798. 1969 Md.Laws, chs. 3 and 4. The revision of the testamentary laws, achieved by ch. 3, followed an exhaustive study by the Governor's Commission to Review and Revise the Testamentary Law of Maryland, otherwise known as the Henderson Commission after its chairman, Hon. William L. Henderson. The revision of the guardianship laws, achieved by ch. 4, followed an equally thorough study by the Estates and Trusts

Section of the Maryland State Bar Association. The new codes, embodied in a rewritten art. 93 (Decedents' Estates) and a new art. 93A (Protection of Minors and Disabled Persons), followed closely the drafts submitted to the Legislature in the Henderson Commission's Second Report and the Bar Association's Report. See Introductory Note to Comments (Md.Code art. 93, 1969 Repl.Vol.) and Introductory Note (Md.Code art. 93A, 1969 Repl.Vol.).

In accordance with the Henderson Commission proposal, §§ 74 and 76 of art. 93, providing for administration *durante minoritate*, were repealed. Also repealed were other provisions dealing with miscellaneous special forms of administration, and, indeed, the Commission noted that one of the major changes recommended by it was "[c]onsolidation of the variegated forms of special administrators, such as administrators ad colligendum, administrators d.b.n., etc.," citing proposed § 6–401.

That section, enacted as proposed, provided generally for the appointment of a special administrator by the orphans' court "whenever it is necessary to protect property prior to the appointment and qualification of a personal representative...." Subsection (b) stated that "[a]ny suitable person may be appointed as a special administrator, but special consideration shall be given to persons who will or may be ultimately entitled to letters as personal representatives and are immediately available for appointment." The Commission's Comment to § 6–401 states that "[t]he special administrator eliminates the need for the miscellany of administrations that proliferate throughout Article 93. Accordingly, the Commission recommends the abolition of letters ad colligendum [§§ 67–73 (Md.)]; *letters durante minoritate* [§§ 74, 76 (Md.)]; and letters pendente lite [§§ 75–76 (Md.)]." (Emphasis added.) Section 6–401, enacted in 1969, now appears without substantial change as § 6–401 of the Estates & Trusts article.

Although the revisions to the guardianship law accomplished by ch. 4 were substantial in many respects, there was no

change in the preexisting law vesting in a guardian of the property title to all property of the minor then held or thereafter acquired. See Comment to art. 93A, § 206 (1969 Repl.Vol.).

## Discussion

The statutory history that we have recounted, when coupled with the analysis in *Cephalis v. Briscoe, supra,* 202 Md. 419, 96 A.2d 602 indicates, first, that, after 1798, the authority of a court to grant letters of administration *durante minoritate* was based on statute, not, as Valerie contends, purely on the common law, and, second, that that statute was intentionally repealed in 1969. The question is not, as Valerie suggests, whether the 1969 law repealed a common law right by implication; the authority of the court to permit an administration *durante minoritate* was based on an extended reading of §§ 74 and 76 of art. 93, and the 1969 enactment expressly repealed those sections. *See* 1969 Md.Laws, ch. 3, § 1. It is thus evident that an administration *durante minoritate,* as a separately authorized form of administration, no longer exists in Maryland, and so the cases cited by Valerie from other jurisdictions dealing with that kind of administration are irrelevant.

That does not end the inquiry, however. We still have the interplay between (1) § 5–104, setting forth the priorities for letters of administration, (2) § 5–105, declaring children under 18 to be ineligible for such letters, (3) § 6–401 providing for a special administrator, and (4) the authority of an orphans' court or the circuit court to appoint a guardian for a minor. The real question concerns § 6–401 and the guardianship law, for, unless they provide a safety net for Burl and Tyler, § 5–105 will cause those children to lose whatever right they might have under § 5–104. As children under 18, they cannot themselves be granted letters of administration.

Unlike the English common law summarized by Blackstone, current Maryland law recognizes two distinct forms of guardianship over minors—guardianship of the person and guard-

ianship of the property. By virtue of Md.Code Fam.Law art., § 5–203, parents are the natural guardians of their minor children, and, if one parent dies, the survivor is the sole natural guardian. As such, the parent is responsible for the child's support, care, nurture, welfare, and education. That is essentially the same authority and set of duties possessed by a guardian of the person. *See* Md.Code Est. & Trusts art., § 13–708. It has long been recognized that, except as otherwise provided by statute, the authority of a natural guardian or a guardian appointed for the person does not extend to controlling the property of the minor. 39 Am.Jur.2d *Guardian and Ward,* § 9, citing, in part, *Fridge v. State,* 3 Gill & J. 103 (1830). In Maryland, a guardian of the person does assume the duty to take reasonable care of the minor's personal effects; if protection of other property is required, he may commence protective proceedings to have a guardian appointed for that property. Est. & Trusts art., § 13–708(b)(4).

A guardian of the property, or estate, acquires title to the property of the minor (Est. & Trusts art., § 13–206(c)) and may exercise general control over it for the benefit of the minor. §§ 13–213, 13–214, 15–102.

These are common provisions in State law, and it is upon these powers that Valerie and Donna rely as authorization for their representing their children as administrators.

There are a number of cases around the country in which the precise question—whether the guardian of a minor or incompetent person who, but for that disability, would be entitled to appointment as administrator, is entitled, as that person's guardian, to the appointment—has been answered. The courts have reached different results, most saying "yes," but some saying "no ." A careful review of these cases indicates that the different answers are often, though not always, the product of particular statutes that govern the result. In some States, for example, there is a specific statute authorizing or requiring the court to grant letters to the guardian or conservator of a person who, but for minority or

other disability, would be entitled to the appointment, and in those States the courts do indeed appoint such guardians or conservators in preference to persons having a priority lower than that of the ward. *See, for example, In re Estate of Thelen,* 9 Ariz.App. 157, 450 P.2d 123 (1969); *In re Estate of Waltz,* 244 Cal.App.2d 217, 52 Cal.Rptr. 880 (1966); *Estate of Trego,* 81 Cal.App.3d 530, 146 Cal.Rptr. 664 (1978); *Estate of Payne,* 75 Misc.2d 425, 346 N.Y.S.2d 131 (Surr.Ct.1973); *Sparks v. Steele,* 501 P.2d 1106 (Okla.1972); *Matter of Estate of Johnson,* 344 N.W.2d 86 (S.D.1984).

Other States, having no controlling statute, follow the traditional common law, occasionally embodying the notion of an administration *durante minore aetate,* and allow the guardian to assume the preferential status of his ward. *Phillips v. Gladney,* 234 Ga. 399, 216 S.E.2d 297 (1975); *Matter of Estate of Moreland,* 537 So.2d 1337 (Miss.1989); *Mowry v. Latham,* 17 R.I. 480, 23 A. 13 (1891); *In re Weeks' Estate,* 40 Ind.App. 139, 81 N.E. 107 (1907); *Woodruff v. Snoover,* 45 A. 980 (N.J.Prerog.Ct.1900). Arkansas allowed a guardian to serve in place of a minor child of the decedent after concluding that the statutory priorities need not be followed in "unusual circumstances," which it found to exist in that case. *Standridge v. Standridge,* 304 Ark. 364, 803 S.W.2d 496 (1991). Alabama, on the other hand, has taken the view that, in the absence of any specific authority to substitute a guardian for the disqualified ward, there is none. *Ex Parte Holladay,* 466 So.2d 956 (Ala.1985). The District of Columbia reached a similar result but relied on a statutory direction that, where a person otherwise entitled to appointment is incompetent to serve, administration shall be granted as if that person were not living. *See In re Estate of Shorter,* 444 A.2d 954 (D.C.App.1982); *see also In re Golembiewski's Estate,* 146 Ohio St. 551, 67 N.E.2d 328 (1946) (holding that a guardian of a minor spouse was not eligible as such for appointment as administrator under an Ohio statute).

Maryland has neither a statute specifically authorizing the appointment of a minor's guardian in place of the minor (as in Arizona, California, New York, South Dakota, and Oklahoma)

nor one like those of the District of Columbia and Ohio, essentially equating minority with non-existence. As noted, Maryland once did have a statute similar to that in the District, first enacted as part of the 1798 law, but it was repealed in the 1969 revision. *See* former Md.Code (1957), art. 93, § 59 providing that if a person named as executor was under 18, letters may be granted as if such person had not been named, and § 21, providing that all questions touching the qualifications of an administrator were to be determined in like manner as those of an executor.

Had there never been a codification of the administration *durante minoritate* and a subsequent express repeal of that device, we might be more inclined to follow the common law approach. We need to give effect to the apparent intention of the Legislature when it abrogated that mechanism, however. Presumably, it accepted the explanation of the Henderson Commission, which did not regard that kind of administration as unnecessary because of the guardianship law but rather desired to substitute for it the limited provision for special administration in § 6–401.

The General Assembly had before it in 1969 an entire rewriting of the testamentary and guardianship laws, and we must assume that, if it desired, as a caveat to § 5–104 or 5–105, to allow a lesser priority person to jump ahead solely by virtue of his or her guardianship status, it would have said so, as have the legislatures of other States. Obviously, it did not do so. There is no indication in any of the legislative history, including the Reports and comments of the Henderson Commission or the Bar Association, of any intent to allow a court to prefer the guardian of an unqualified minor or incompetent person over a qualified person in a lower priority category than the ward but in a higher priority category than the person who is the guardian. We therefore do not believe that Valerie's or Donna's status as either natural guardians or guardians of the property of their respective children give them any higher priority status than they would otherwise have.

That leaves the matter of § 6–401, which permits a court to appoint a special administrator "whenever it is necessary to protect property prior to the appointment and qualification of a personal representative." If faced with a person otherwise entitled to letters who is near his 18th birthday but hasn't quite reached it, the court might, arguably, be entitled to appoint a special administrator for the brief interim. We need not determine that here, however, for both Burl (13) and Tyler (2) are sufficiently young that the estate will likely be closed before either has reached the age of 18. On these facts, the court could not properly appoint Valerie or Donna under that statute.

For these reasons, we conclude that the court erred in removing Joyace and appointing Valerie and Donna based on their statuses as parents and guardians. We need, therefore, to remand the case for the court to consider and determine the alternative reasons asserted for removal of Joyace.

**JUDGMENT VACATED; CASE REMANDED TO CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS; APPELLEES TO PAY THE COSTS.**